1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOLANDA GARZA,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No.  1:21-cv-00403-BAK (SAB)<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 18, 19, 20) |

**I.**

**INTRODUCTION**

Plaintiff Yolanda Garza ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Social Security Income (SSI) benefits pursuant to Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument, to Magistrate Judge Stanley A. Boone.[1]  For the reasons set forth below, Plaintiff's appeal shall be denied.

---

[1]  The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (ECF Nos. 7, 9, 10, 13.)

## II.

## BACKGROUND[2]

Plaintiff filed an application for SSI under Title XVI on October 27, 2017, alleging disability beginning January 6, 2016, due to schizophrenia, panic attacks, depression, anxiety, and self-isolation.  (Admin. Rec. ("AR") 180–85, 202, ECF No. 12-1.)  At the time Plaintiff's application was filed, Plaintiff was thirty-two years old, had a limited education but was able to communicate in English, and did not have any past relevant job experience.  (See AR 29.)

Plaintiff's claim was initially denied on May 9, 2018, and denied upon reconsideration on July 18, 2018.  (AR 92–96, 101–06.)  On December 11, 2019, Plaintiff appeared before Administrative Law Judge Scott A. Bryant (the "ALJ"), via videoconference, for an administrative hearing.  (AR 37–58.)  On February 19, 2020, the ALJ issued a decision denying benefits.[3]  (AR 16–36.)  On September 14, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (AR 5–10.)

Plaintiff initiated this action in federal court on March 11, 2021, and seeks judicial review of the denial of her application for benefits.  (ECF No. 1.)  The Commissioner lodged the operative administrative record on December 20, 2021.  (ECF No. 12.)  On May 27, 2022, Plaintiff filed an opening brief.  (ECF No. 18.)  On June 22, 2022, Defendant filed a brief in opposition.  (ECF No. 19.)  Plaintiff filed a reply brief on July 7, 2022.  (ECF No. 20.)

## III.

## LEGAL STANDARD

### A.     The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any

---

[2] For ease of reference, the Court will refer to the administrative record by the pagination provided by the Commissioner and as referred to by the parties, and not the ECF pagination.  However, the Court will refer to the parties' briefings by their ECF pagination.

[3] In addition to her claim for SSI benefits that is the subject of the instant action, Plaintiff also had a prior Title II application for disability benefits, which was originally filed on October 27, 2016, and received a final determination pursuant to 20 C.F.R. § 404.1488 on December 15, 2017.  (See AR 19.)  On December 9, 2019, Plaintiff moved to reopen her Title II application (AR 19, 314–21); however, on February 19, 2020, the ALJ denied this motion.  (AR 19.)  Plaintiff has not challenged the denial.

medically determinable physical or mental impairment[4] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[5] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on the claimant at steps one through four. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL

---

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

[5] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only SSI benefits in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes the cases and regulations cited herein are applicable to the instant matter.

1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (Jul. 2, 1996).[6]  A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. § 404.1527(d)(2) (RFC is not a medical opinion); 20 C.F.R. § 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), or call a vocational expert ("VE").  See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' "  Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

**B.**    **Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision.  See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court must find

---

[6] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).  "[T]he threshold for such evidentiary sufficiency is not high."  Biestek, 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard."  Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  Stout, 454 F.3d at 1055–56.  Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination."  Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

## IV.

## DISCUSSION

Plaintiff raises only one issue on appeal: Plaintiff contends the ALJ erred by failing to

5

include (or explain why they were excluded) sufficient mental limitations in the RFC, despite acknowledging that Plaintiff suffers moderate limitations for interaction with others and adapting and managing herself.  (ECF No. 18 at 1, 5–7.)

### A.    The ALJ's Decision

The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920.  (AR 21–32.)  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 27, 2017, the date of her application.  (AR 21 (citing 20 C.F.R. §§ 416.971 et seq.).)  At step two, the ALJ found Plaintiff had the severe impairments of unspecified psychosis, major depressive disorder, anxiety disorder, bipolar disorder, and polysubstance abuse disorder.  (Id. (citing 20 C.F.R. § 416.920(c)).)  The ALJ also noted Plaintiff had obesity, degenerative disc disease, and acute hip strain, but determined that these conditions—considered singly or in combination—did not affect Plaintiff's ability to perform basic work activities more than minimally and were therefore non-severe.  (AR 22 (citing 20 C.F.R. § 416.923).)

At step three, the ALJ applied the special technique for evaluating the severity of mental impairments by rating Plaintiff's level of impairment in the four functional areas under paragraph B (the "paragraph B criteria"),[7] and found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. §§ 416.920, 416.920(d), 416.925, and 416.926.  (AR 22.)  More specifically, the ALJ determined:

(1) Plaintiff had a "mild" limitation in understanding, remembering, or applying information because, while Plaintiff reported that she sometimes needs reminders to take her medication and claimed to have some challenges in recalling her work history during the hearing (AR 23 (citing AR 254–67, 37–58)), the medical record shows Plaintiff has generally good memory—i.e., she was able to perform simple math problems and recall three words after five minutes during a consultative examination; and she has logical, focused, coherent, and rational

---

[7] To satisfy "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations in the following broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; or (4) adapting or managing themselves. (AR 22–23 (citing Listings 12.03, 12.04, 12.06).)  An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis.  A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.  See 20 C.F.R. §§ 404.1520a, 416.920a (describing ALJ's special technique for evaluating paragraph B criteria).

thought flow (id. (citing AR 328, 332, 336, 340–41, 343, 362, 376, 391, 402, 451–56, 524, 690, 777, 809, 813, 816, 819, 1077))—she reported that she does not need reminders to take care of her personal grooming, and she is able to prepare simple meals, do laundry, grocery shop, handle money, and watch TV (id. (citing AR 254–67, 1042–53, 1054–79)); and the medical records indicate that Plaintiff has average intelligence (id. (citing AR 809, 813, 816, 819, 1077)).

(2) The ALJ found Plaintiff had a "moderate" limitation in interacting with others because, while Plaintiff reported that she rarely leaves her house, does not interact with people other than her mother, and is paranoid that people will harm her (id. (citing AR 37–58, 254–67)), the medical records generally describe Plaintiff as calm and cooperative with appropriate behavior (id. (citing AR 326, 361, 370, 378, 380, 386, 389, 392, 394, 396, 399, 426, 434, 451–52, 807–47, 969, 972, 987, 992, 995, 1020, 1034, 1076)), note that she spends time with her mother and sister and is isolating less with treatment (id. (citing AR 1042–53, 1054–79)), and indicate Plaintiff regularly performs actions that require a consistent amount of social interaction, such as shopping and buying groceries (id. (citing AR 254–67, 1042–53, 1054–79, 1054–79)).  Based on these medical records, the ALJ concluded that a "moderate" limitation in interacting with others "more than adequately accounts for medically supported constraints in this area."  (AR 23.)

(3) The ALJ found Plaintiff had a "mild" limitation in concentrating, persisting, or maintaining pace because, while Plaintiff reported she has trouble focusing, hears voices, and needs encouragement to do things like perform chores (id. (citing AR 37–58, 254–67)), the ALJ noted Plaintiff *also* reported that she does not hear voices when she is taking her medication, she watches TV, she follows instructions to the best of her ability, and she prepares simple meals (id. (citing AR 254–67, 326–35, 451–56)).  The ALJ further noted the medical evidence indicates Plaintiff has generally normal concentration with logical, focused, coherent, and rational thought flow.  (Id. (citing AR 328, 332, 336, 340–41, 343, 362, 376, 391, 402, 451–56, 777, 781, 809).)

(4) Finally, the ALJ found Plaintiff had a "moderate" limitation in adapting or managing herself because, while Plaintiff reported she does not handle stress or changes in routine well and requires encouragement from her mother to perform her daily grooming or chores (id. (citing  AR 37–58, 254–67)), the medical evidence generally indicates Plaintiff is cooperative and adequately

groomed with appropriate behavior and normal insight and judgment (id. (citing AR 326, 336, 340–41, 343, 352, 361–62, 367, 370, 376, 378, 380, 386, 389, 392, 394, 396, 399, 426, 434, 451–52, 807–47, 969, 972, 978, 987, 992, 995, 1020, 1034, 1076)); and Plaintiff also reported that she is able to perform her daily grooming independently, handle money, go grocery shopping, spend time with her family, and prepare simple meals for herself (id. (citing AR 254–67, 1042–53, 1054–79)).

The ALJ also considered whether the "paragraph C" criteria were satisfied, and determined that they were not.  (AR 24.)  The ALJ reached this conclusion after reviewing listings 12.03, 12.04, and 12.06 and determining Plaintiff did not have a medically documented history of depression, psychosis, bipolar disorder, or anxiety over a period of at least two years' duration coupled with evidence in the medical records of both (1) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of Plaintiff's mental disorder; and (2) marginal adjustment (i.e., minimal capacity to adapt to changes in her environment or to demands that are not already part of her daily life).  (Id.)

Before proceeding to step four, the ALJ determined Plaintiff has the RFC to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> **she can only frequently interact with supervisors and co-workers; and only occasionally interact with the public.  She can frequently adapt to changes in the workplace, and is limited to simple and routine tasks, meaning she would not be capable of complex judgment or analysis in the workplace, due to the side effects of her medication.**

(AR 25 (citing 20 C.F.R. §§ 416.929, 416.920c, and SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017)) (emphasis in original).)

At step four, the ALJ found Plaintiff had no past relevant work.  (AR 29 (citing 20 C.F.R. § 416.965).)  At step five, considering Plaintiff's age, education, work experience and RFC, and the VE's testimony, the ALJ determined Plaintiff could perform jobs existing in significant numbers in the national economy, specifically the jobs of

(1) Commercial Institutional Cleaner (Dictionary of Occupational Titles ("DOT")

381.687-014, heavy exertional level, and specific vocational preparation ("SVP") 2, with approximately 40,000 positions available in the national economy);

(2) Lab Cleaner (DOT 381.687-022, medium exertional level, and SVP 2, with approximately 50,000 positions available nationally); and

(3) Electronics Worker (DOT 726.687-010, light exertional level, and SVP 2, with approximately 70,000 positions available in the national economy).

(AR 29–30 (citing 20 C.F.R. §§ 416.969, 416.969(a)); see also AR 55–56 (ALJ's hypothetical and VE testimony).) Therefore, the ALJ found Plaintiff was not under a disability at any time since October 27, 2017 (the date the application was filed). (AR 31 (citing 20 C.F.R. §§ 416.920(g)).)

## B.    Legal Standard

The RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. §§ 404.1520(e), 404.1545(a), 416.945(a); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (RFC reflects current "physical and mental capabilities"); SSR 96-8p, 1996 WL 374184, at *2. Thus, it represents the maximum amount of work the claimant is able to perform based on all the relevant evidence in the record. See id. As previously noted, the final responsibility for determining the RFC is reserved to the Commissioner. 20 C.F.R. § 416.927(d)(2); see also Vertigan, 260 F.3d at 1049 ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.") (citing 20 C.F.R. § 404.1545); 20 C.F.R. § 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence.").

In an RFC assessment, the ALJ must include all of a claimant's impairments. 20 C.F.R. §§ 404.1545, 416.945; Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009). Because the assessment of a claimant's RFC is at the heart of steps four and five of the sequential analysis in determining whether a claimant can still work despite severe medical impairments, an improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.' " SSR

96–8p, 1996 WL 374184 at *4.  Thus, "an RFC that fails to take into account a claimant's limitations is defective."  Valentine v. Comm'r. of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009); Martin v. Comm'r of Soc. Sec. Admin., 472 Fed. App'x 580 (9th Cir. 2012) (finding ALJ erred in formulating RFC by failing to incorporate medical opinion of claimant's work limitations without providing specific and legitimate reasons for doing so; and finding VE's testimony based on flawed RFC had no evidentiary value).  In reviewing whether the ALJ committed error in determining the RFC, the relevant inquiry is whether the medical evidence supports the ALJ's finding.  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173–74 (9th Cir. 2008) (holding the RFC assessment adequately captures restrictions in broad functional areas if it is consistent with the concrete limitations in the medical opinions); see also Schneider v. Comm'r, 433 Fed. Appx. 507, 509 (9th Cir. 2011) (ALJ's failure to address claimant's migraines was harmless because medical record did not support finding that migraines would affect claimant's functioning at work).

**C.    Analysis**

As the Court previously noted, the paragraph B criteria evaluates mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  To satisfy the paragraph B criteria, a claimant's mental impairments must be deemed to result in an "extreme" limitation as to at least one of the four categories, or a "marked" limitation in at least two of the four categories.  Here, the ALJ found Plaintiff was "moderately" limited with respect to "interacting with others" and "adapting or managing [herself]," and only "mildly" limited with respect to the other two categories.  (AR 23.) As such, Plaintiff did not meet the paragraph B criteria.

Plaintiff challenges the ALJ's RFC determination on the basis that the ALJ did not properly account for the two "moderate" paragraph B limitations in the RFC determination when he determined Plaintiff could "frequently" interact with supervisors and co-workers, and "frequently" adapt to changes in the workplace.  (ECF No. 18 at 1, 5–6.)  Consequently, Plaintiff argues the ALJ failed to consider the impact of those limitations on her ability to perform work at step five.  (Id. at 7.)

In evaluating Plaintiff's argument, the Court finds it appropriate to note the points of the ALJ's decision Plaintiff has not challenged, as any arguments not raised in the briefings are deemed waived.  See Lewis, 236 F.3d at 517 n.13; see also Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) (stating court "will not consider any claims that were not actually argued in appellant's opening brief" and will only "review . . . issues which are argued specifically and distinctly in a party's opening brief.").  Notably, Plaintiff does not challenge the ALJ's characterization of the medical record, or his evaluation of the medical opinions; she does not challenge the ALJ's evaluation and weighing of her testimony or the testimony of her lay witness; it is undisputed that the ALJ expressly provided the same terms of his RFC determination to the VE during the disability hearing; and Plaintiff does not challenge the VE's determination of available jobs based on the ALJ's RFC determination.  Finally, Plaintiff does not challenge the ALJ's characterization of the paragraph B criteria as mild or moderate based on his review of the medical opinions and record, or the ultimate determination that she did not satisfy the paragraph B criteria.

Instead, Plaintiff contends the ALJ's decision should be reversed as "internally inconsistent" because the step three "moderate" limitations are not reflected in the limitations set forth in the ALJ's RFC determination with respect to "interacting with others" and "adapting or managing oneself."  More specifically, Plaintiff argues a "moderate" limitation reflects an ability to perform an activity no more than "occasionally" (such as an RFC limitation of "only occasional and superficial contact with coworkers"); therefore, the ALJ's "moderate" designation of the two paragraph B criteria does not comport with the RFC finding that Plaintiff can "frequently interact with supervisors and co-workers" and "frequently adapt to changes in the workplace."  (ECF No. 18 at 6.)  Plaintiff argues these internal inconsistencies within the ALJ's decision amount to legal error.  (ECF No. 20 at 2.)  The Court, however, finds this argument unsupported in law and unpersuasive.

In general, Plaintiff's semantical focus on the direct translation between the paragraph B "broad functional areas" and the specific limitations set forth in the RFC determination is unavailing for two main reasons.  First "[t]he mental RFC assessment used at steps 4 and 5 of the

11

1    sequential evaluation process requires a more detailed assessment [than at steps two and three] by

2    itemizing various functions contained in the broad categories found in paragraphs B and C of the

3    adult mental disorders listings."   Carver v. Colvin, 600 Fed. App'x 616, 620 (10th Cir. 2015)

4    (quoting SSR 96–8p, 1996 WL 374184, at *4); see also SSR 96-8p, 1996 WL 374184, at *6; 20

5    C.F.R. §§ 416.920(a)(4)(ii)–(iii), 416.920a(d)(1).   For that reason, a direct translation of the

6    findings for the broad functional areas at step three into the concrete, functional limitations that

7    must be identified in the RFC is untenable.   See Langford v. Astrue, No. CIV S–07–0366 EFB,

8    2008 WL 2073951, at *3 (E.D. Cal. May 14, 2008) (finding limitations under the B and C criteria

9    are used to rate the severity of mental impairments at steps two and three of the sequential

10   evaluation; they are not an RFC assessment and an ALJ need not include them, verbatim, in his

11   ultimate assessment of a claimant's RFC); see also Chavez v. Colvin, 654 Fed. App'x. 374, 375

12   (10th Cir. 2016) (ALJ need not "parrot . . . exact descriptions of . . . limitations" to reach an RFC

13   determination consistent with the medical record and claimant's limitations); Carver, 600 Fed.

14   App'x at 620 (finding ALJ "sufficiently captured the essence of the Section III functional

15   limitations," despite not repeating limitations as stated in the medical opinions "verbatim," and

16   commenting, "To conclude otherwise would parse the ALJ's language too finely."); Schneider,

17   433 Fed. Appx. at 509–10 (ALJ reasonably translated diagnosis that claimant "was expected to

18   have significant difficulties in maintaining normal social interactions" due to "stress and anxiety"

19   and adequately addressed all limitations by issuing RFC which limited claimant to "unskilled

20   work with no public contact and minimal social interactions with co-workers," even though it did

21   not expressly include inability to interact with "supervisors").   Second, the Ninth Circuit has

22   emphasized that the relevant inquiry into the propriety of the translation of "moderate" from a

23   paragraph B designation to a concrete RFC functional limitation is whether the RFC limitations

24   are supported by the properly weighted medical evidence.   See Stubbs-Danielson, 539 F.3d at

25   1173–74 (the RFC assessment adequately captures restrictions in broad functional areas if it is

26   consistent with the concrete limitations in the medical opinions).   Thus, to evaluate whether the

27   ALJ properly encompassed certain paragraph B criteria limitations into the RFC determination,

28   the Court must examine the challenged limitations within the context of the entire RFC

determination and the ALJ's evaluation of the medical evidence in this case, rather than applying a *per se* rule.

Here, Plaintiff concludes, without explanation, that the step three "moderate" impairments were not incorporated into the RFC limitations because of the use of the word "frequently," thus, the ALJ erred. But Plaintiff does not examine these limitations within the context of the entire RFC determination, even though the limitations set forth in the RFC are generally interrelated; she does not separately address how each "moderate" limitation was purportedly improperly incorporated into the RFC determination, even though each broad functional category is distinct; and she does not proffer argument that the RFC determination is unsupported by the medical records in this case. Furthermore, Plaintiff's reliance on her cited caselaw for the *per se* rule that a "moderate" limitation in a paragraph B category must be directly translated into an RFC limitation of "occasional" actions, is misguided. First, the cases cited by Plaintiff are inapposite to the instant matter.[8] Second, Plaintiff's literal application of the RFC limitations assessed in the

---

[8] As an initial matter, the Court notes a number of the cases relied upon by Plaintiff arise from the Tenth Circuit, which is not binding on this Court. See, e.g., Sandoval v. Berryhill, No. CIV 17-0641 JHR, 2018 WL 3429920 (D.N.M. Jul. 16, 2018); Chavez, 654 Fed. App'x. at 375; Orso v. Colvin, 658 Fed. App'x. 418, 420 (10th Cir. 2016). This distinction is worth noting to the extent that the circuits may differ in their approach to RFC analyses. Compare, e.g., Carver, 600 Fed. App'x. at 619 (deferring largely to the SSA's Program Operations Manual System (POMS) in analysis) with Shaibi v. Berryhill, 883 F.3d 1102, 1107 (9th Cir. 2017) (citing Lockwood v. Comm'r Soc. Sec. Admin., 616 F.3d 1068, 1073 (9th Cir. 2010)) (pointedly noting, in rejecting claimant's arguments based on POMS, "POMS guidance is not binding either on the ALJ or on a reviewing court."). More importantly, the cases are factually distinguishable. In Sandoval v. Berryhill, for example, the claimant's challenge to the RFC was based on the argument that the ALJ failed to properly weigh the evidence and consider the limitations supported by the record. Sandoval, 2018 WL 3429920, at *7. Plaintiff makes no such argument here, but instead challenges the RFC determination on the sole basis that is internally inconsistent with the ALJ's step three findings. Moreover, the RFC determination requiring only "occasional" interaction with coworkers and supervisors, and "incidental" interaction with the public was synthesized from findings of a limitation in ability to interact with others and to respond appropriately to usual work situations and changes in a routine work setting that were characterized as "moderately to markedly impaired," a more restrictive finding than the instant case. Id. Similarly, Burkett v. Colvin does not analyze the translation of paragraph B limitations to RFC limitations, but instead evaluates whether the ALJ properly evaluated the medical evidence in the record. Burkett, No. 3:12-cv-05899-RBL-KLS, 2013 WL 6632121, at *4 (W.D. Wash. Dec. 17, 2013); see also Frederick S. v. Comm'r. of Soc. Sec., No. 3:18-CV-05272-DWC, 2018 WL 6011885 (W.D. Wash. Nov. 16, 2018) (does not address issue of whether internal inconsistencies existed between ALJ's paragraph B findings and RFC determination). Joseph M. R. v. Comm'r. of Soc. Sec. is distinguishable for several reasons. Notably, in Joseph M. R., the ALJ erred in failing to explain or account for rejecting medical opinions that supported greater limitations than the ALJ assessed in the RFC, as well as improperly discounting the claimant's symptom testimony and his lay witness testimony. Joseph M. R., 3:18-cv-01779-BR, 2019 WL 4279027, at *9 (D. Or. Sept. 10, 2019). Thus, the determination that the ALJ's inconsistent findings between the paragraph B analysis and the RFC determination was ultimately based on the court's holding that the RFC did not comport with the claimant's medical records and testimony (rather than solely due to an internal inconsistency within the ALJ's decision). Id. In addition, the paragraph B criteria at issue in Joseph M. R. are different from the functional areas at issue in the present case. Id. Chavez v. Colvin actually appears to support Defendant's arguments, in that the Tenth Circuit determined the RFC limitation that the claimant could "interact with co-workers and supervisors under

aforementioned cases mistakenly conflates "sufficiency" with "necessity."[9]   Thus, Plaintiff's argument that the Court must find the ALJ erred because he did not expressly mimic this same limiting language in the instant RFC determination—regardless of whether the RFC limitations adequately address the paragraph B criteria findings and the medical records through other language—fails.

More specifically, upon examination of each of the two paragraph B functional areas Plaintiffs contends were improperly incorporated into the RFC limitations—an analysis Plaintiff does not undertake—the Court finds the ALJ properly translated his paragraph B criteria "moderate" limitations into the RFC determination.

### 1.   "Moderate" Limitation in Interacting with Others

The Ninth Circuit has determined the limitation to unskilled work[10] adequately encompasses a claimant's "moderate mental residual functional capacity limitations." See, e.g., Thomas, 278 F.3d at 953, 955, 958 (if a job is unskilled, the tasks are very simple and may be performed by a claimant with "mild to moderate deficiencies of concentration"); Stubbs-Danielson, 539 F.3d at 1169 (limitation to "simple, routine, repetitive" tasks accommodates medical opinions that a claimant has a "slow pace" and "several moderate limitations in other mental areas."); see also Sabin v. Astrue, 337 Fed. App'x. 617, 620–21 (9th Cir. 2009) (finding

---

routine supervision" but could not interact with the public more than occasionally—a limitation extremely similar to the one expressed by the ALJ in the instant case—properly accounted for the claimant's moderate limitation in social functioning.  Chavez, 654 Fed. App'x. at 374.  And the court in Orso v. Colvin commented that an "ALJ's finding of a moderate limitation in [a paragraph B functional area] at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment."  Orso, 658 Fed. App'x. at 420 (citation omitted).  At most, Gray v. Colvin, 6:15-cv-00647-BR, 2016 WL 3392313, at *5 (D. Or. Jun. 13, 2016), appears to support Plaintiff's position, in that the court noted the RFC appeared consistent with the medical records, but nevertheless found internal inconsistencies in the ALJ's decision with respect to the ALJ's step three paragraph B findings and the RFC determination.  However, this Court cannot deem Gray persuasive where no discussion was provided as to how the ALJ's findings were internally inconsistent, or in light of Ninth Circuit caselaw emphasizing the importance of the relationship between the medical records and the RFC determination.

[9] That is, in the cases cited by Plaintiff, the claimant challenged the ALJ's RFC restriction of "occasional" interaction based on "moderate limitation" findings in the paragraph B criteria.  The courts in those cases held the ALJ's RFC limitations sufficiently addressed the paragraph B criteria findings; they did not hold that it was necessary to identify such an RFC limitation to address every instance of a "moderate" paragraph B criteria finding.  See, e.g., Orso, 658 Fed. App'x. at 420.

[10] Unskilled work is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. §§ 404.1568; 416.968.  Unskilled work does not require working with people.  20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 201.00(I), 202.00(g); SSR 85–15, 1985 WL 56857.

the ALJ properly assessed medical evidence when determining—despite moderate difficulties as to concentration, persistence, or pace—the claimant could perform simple tasks on a consistent basis).

Moreover, the Ninth Circuit and courts in this circuit have also concluded a limitation to "simple tasks," as here, adequately encompasses moderate limitations *with social functioning*. See Langford, 2008 WL 2073951, at *7 ("unskilled work . . . accommodated [the claimant's] need for 'limited contact with others' "); Ramirez v. Commissioner, No. 1:18-cv-01322-SAB, 2019 WL 4201437, at *13, 18 (E.D. Cal. Sept. 5, 2019) (finding "a limitation to simple and routine tasks adequately encompasses a moderate limitation on social functioning."); Gann v. Berryhill, No. 1:17-cv-00325-SKO, 2018 WL 2441581, at *10–12 (E.D. Cal. May 31, 2018) (RFC limitation to "simple, routine tasks" performed in unskilled work "adequately encompasses moderate limitations with social functioning including getting along with peers and responding appropriately to supervisors."); Messerli v. Berryhill, No. 1:16-CV-00800-SKO, 2017 WL 3782986, at *11 (E.D. Cal. Aug. 31, 2017) (finding limitation to "simple repetitive tasks" accounted for moderate limitations in claimant's ability to accept instructions from supervisors, interact appropriately with coworkers and the public, perform work on a consistent basis, and to complete a normal workday and workweek); Menges v. Berryhill, No. 1:16-cv-01766-BAM, 2018 WL 1567786, at *8 (E.D. Cal. Mar. 30, 2018) ("A restriction to simple, repetitive tasks amply accounts for any moderate/mild limitations in mental or social functioning."); Henry v. Colvin, No. 1:15-CV-00100-JLT, 2016 WL 164956, at *18 (E.D. Cal. Jan. 14, 2016) ("the restriction to simple tasks encompasses [the claimant's] moderate limitations with . . . social interaction"); cf. Shaibi, 883 F.3d at 1107 (holding the ALJ adequately accounted for doctor's opinion about claimant's "moderate" social limitations by limiting him to "simple routine tasks in a non-public setting, with 'occasional' interaction with co-workers").

The Court finds Rogers v. Comm'r of Soc. Sec. Admin., though an unpublished Ninth Circuit case, particularly persuasive, in relation to the instant matter. Rogers, 490 Fed. App'x. 15 (9th Cir. 2012). In Rogers, the ALJ found the claimant had "moderate" difficulties at step three in the paragraph B area of social functioning, among other broad functional areas; yet the RFC

did not include limitations that expressly addressed social functioning.  Id. at 17.  Instead, the RFC determined the claimant could perform work limited to simple routine tasks performed in unskilled work.  Id.  Nonetheless, the Ninth Circuit held all of the claimant's limitations were adequately captured in the RFC determination because it was consistent with the limitations in work-related abilities identified by the medical opinions in the record.  Id. at 17–18 (citing Stubbs-Danielson, 539 F.3d at 1174).

Here, the ALJ determined Plaintiff could only "frequently interact with supervisors and co-workers; and only occasionally interact with the public."  (AR 25.)  Plaintiff takes issue with the ALJ's use of the term "frequent" with respect to her ability to interact with supervisors and co-workers, arguing it should also be "occasional."  Yet, Plaintiff does not provide any argument to show how the ALJ's RFC limitation regarding her interaction with others is inconsistent with her "moderate" limitation in this "broad area of functioning."  See e.g., Sandoval, 2018 WL 3429920, at *7 (noting only "marked" impairment prevents any interaction; whereas limitation of "moderate to marked" denotes "abilities in these areas are limited, [but] they are not completely absent."); see also 20 C.F.R. §§ 404, Subpt. P, Appx. 1 § 12.00.F.2.c, § 12.00F.2.d (definitions for "moderate," "marked," and "extreme" limitations in the Social Security regulations).[11]

Notably, Plaintiff fails to address the fact that the RFC also limits Plaintiff to unskilled work and "simple and routine tasks" (see AR 25, 30), limitations which the Ninth Circuit has determined sufficiently address "moderate" mental limitations, including limitations in interacting with others.  Stubbs-Danielson, 539 F.3d at 1174; Rogers, 490 Fed. App'x. at 15.  Nor does Plaintiff acknowledge the limitation of "occasional" interaction with the public.  Thus, in ignoring these other limitations in the RFC, which also speak to the broad paragraph B category of "interacting with others," Plaintiff's argument takes the "interaction with supervisors" limitation out of context and seeks to "parse the ALJ's language too finely."  Carver, 600 Fed. App'x at 620.

---

[11] The regulations define a "moderate degree of mental limitation" as "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair"; a "marked" impairment means "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited"; and an "extreme" impairment means the claimant is "[u]nable to function in this area independently."  20 C.F.R. §§ 404, Subpt. P, Appx. 1, § 12.00.F.2.c, § 12.00F.2.d (emphasis added).

Further, the ALJ's determination is supported by the medical record.  In finding Plaintiff was limited to only frequently interacting with supervisors and co-workers and occasionally interacting with the public, the ALJ acknowledged Plaintiff's testimony and rejected the medical opinions of reviewing Drs. Adamo and Collado, who both opined Plaintiff had no limitations with respect to interacting with others.  (AR 28.)  However, he found more persuasive the opinion of examining consultant Dr. Lewis, who opined that Plaintiff's functions were only mildly limited— including her ability to accept instructions from supervisors, and to interact with co-workers and the public.  (AR 28.)  Further, the ALJ noted the record generally describes Plaintiff as calm and cooperative with appropriate behavior, able to spend time with her mother and sister, isolating less with treatment, and capable of performing actions that require consistent amounts of social interaction, such as shopping and buying groceries.  (See AR 23 (citations to the record omitted).) Therefore, the ALJ found the "moderate" limitation in interaction with others "more than adequately accounts for medically supported constraints in this area."  (Id.)  On this record and the ALJ's evaluation of the medical opinions and records—neither of which Plaintiff challenges—the Court finds substantial evidence supports the ALJ's RFC determination with respect to Plaintiff's ability to interact with others.

Finally, even if the ALJ erred, Plaintiff has not demonstrated such error was harmful. Molina v. Astrue, 674 F.3d 1104, 1115–21 (9th Cir. 2012) (quoting Lewis, 236 F.3d at 503) (holding "an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.' "); Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) ("The court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate non-disability determination"); Shinseki, 556 U.S. at 409 (the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination."); see also Schneider, 433 Fed. App'x. at 509 (ALJ's failure to address claimant's migraines at step four, after finding them severe at step two, was harmless because claimant did not present medical evidence to support a finding that her migraines would affect her functioning at work); Keyes-Zachary v. Astrue, 695 F.3d 1156, 1161–62 (10th Cir.

2012) (citing <u>Howard v. Barnhart</u>, 379 F.3d 945, 947 (10th Cir. 2004)) (Where there are no inconsistencies between a medical opinion and a claimant's RFC, any error by the ALJ in weighing such an opinion are harmless).

Notably, simple and unskilled jobs "ordinarily involve primarily dealing with objects, rather than with data or people. . . ."  SSR 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985).  Indeed, the DOT explains the interaction with supervisors, such as "taking instructions-helping," is "not significant" for the positions identified by the ALJ.  <u>See</u>, <u>e.g.</u>, 381.687-014 Cleaner, Commercial or Institutional, DOT 381.687-014, 1991 WL 673257 (2016) (also noting "talking and hearing: occasionally—exists up to 1/3 of the time"); 381.687-022 Cleaner, Laboratory Equipment, DOT 381.687-022, 1991 WL 673259 (2016) (also noting "talking: not present"); 726.687-010 Electronics Worker, DOT 726.687-010, 1991 WL 679633 (2016) (noting same).  Thus, even if the ALJ erred in limiting Plaintiff's interactions with supervisors and co-workers to only "frequently," the error is not prejudicial in light of the actual amount of interaction the DOT indicates is required by the unskilled jobs identified for Plaintiff.  "As such, [Plaintiff] has not shown a 'substantial likelihood of prejudice' requiring a remand." <u>Schneider</u>, 433 Fed. App'x at 509.

### 2.  "Moderate" Limitation in Adapting or Managing Herself

Much of the aforementioned Ninth Circuit caselaw applies equally to the paragraph B functional area of "adapting or managing oneself."  <u>See</u> <u>Thomas</u>, 278 F.3d at 953, 955, 958; <u>Stubbs-Danielson</u>, 539 F.3d 1169.  Likewise, the Ninth Circuit and its district courts have also concluded a claimant's low tolerance for stress or moderate limitations in dealing with changes are encompassed in an RFC of simple, repetitive tasks.  <u>See</u>, <u>e.g.</u>, <u>Rogers</u>, 490 Fed. App'x. at 17–18 (RFC assessment that claimant could perform work limited to simple routine tasks performed in unskilled work was consistent with the medical opinion that she was moderately limited in abilities to understand, remember, and carry out detailed instructions and to respond appropriately to changes in the work setting, and adequately captured all of the claimant's limitations); <u>Stubbs-Danielson</u>, 539 F.3d at 1171, 1174 (ALJ's RFC limiting claimant to "simple, routine, repetitive sedentary work" properly incorporated claimant's limitations related to pace, attention,

concentration, and adaption); Henry, 2016 WL 164956, at *18 ("the restriction to simple tasks encompasses [claimant's] moderate limitations with dealing with changes. . . ."); Longston v. Calvin, No. 1:14-cv-01905-MC, 2015 WL 7761065, at *3–4 (D. Or. Dec. 1, 2015) (finding "moderate limitation in responding appropriately to changes in the work setting" was encompassed in a limitation to unskilled work); Acuna v. Colvin, No. EDCV 14-2404 AGR, 2015 WL 7566624, at *2 (C.D. Cal. Nov. 24, 2015) (upholding RFC limitation to "simple, routine tasks that do not require hypervigilence, do not require being in charge of the safety operation of others, and limit [claimant] to only brief superficial contacts with the public" as sufficiently encompassing claimant's moderate limitation in ability to respond appropriately to changes in the work setting); see also Vezina v. Barnhart, 70 Fed. App'x 932, 934 (9th Cir. 2003) (ALJ's RFC hypothetical restrictions of "low-stress work with limited contact with peers, supervisors, and the public" sufficiently encompassed medical opinion that claimant needed "to do simple tasks, [and] someone had to organize them for her," because identified jobs all "involve[d] simple, repetitive, relatively unskilled tasks," which would not require self-direction or organization on claimant's part); Keller v. Colvin, No. 2:13-cv-0221 CKD, 2014 WL 130493 at *3 (E.D. Cal. Jan. 13, 2014) (finding the ALJ "appropriately captured" a physician's opinion that the claimant required "low stress settings" by limiting claimant to "simple, repetitive tasks equating to unskilled work").

With respect to the paragraph B functional area of "adapting or managing oneself," Plaintiff takes issue with the RFC determination that she can only "frequently adapt to changes in the workplace." Yet, for the same reasons previously noted, Plaintiff does not provide any argument to show how the ALJ's RFC limitations are inconsistent with her ability to adapt and manage herself. Again, Plaintiff ignores the other RFC limitations which cumulatively address the broad category of "adapting and managing oneself," including the limitations to unskilled work and "simple and routine tasks, meaning she would not be capable of complex judgment or analysis in the workplace," and Plaintiff does not explain how they are insufficient to address her limitations. See Rogers, 490 Fed. App'x. at 17–18; Stubbs-Danielson, 539 F.3d at 1171, 1174; Henry, 2016 WL 164956, at *18; Longston, 2015 WL 7761065, at *3–4; Acuna, 2015 WL

1 | 7566624, at *2.

2       Nor does Plaintiff argue the RFC determination is unsupported by the medical record and

3 | the ALJ's findings.   Here, reviewing Drs. Adamo and Collado—who the ALJ found less

4 | persuasive—opined Plaintiff has moderate limitations adapting or managing herself, can adapt to

5 | typical change, and has no other limitations in her RFC.   (AR 28 (citing AR 59–71, 73–88).)

6 | Meanwhile, Dr. Lewis opined Plaintiff's ability to perform work activities on a consistent basis

7 | without special or additional instruction is mildly impaired; and her ability to maintain regular

8 | attendance and complete a normal workday/workweek without interruptions from a psychiatric

9 | condition is mildly impaired.   (AR 455.)   The ALJ found this portion of Dr. Lewis's opinion more

10 | persuasive as it was supported by the medical record.   (AR 28 (citing AR 325, 328, 332, 336,

11 | 340–41, 343, 352, 361–62, 367, 370, 376, 379, 380, 386, 389, 392, 394, 396, 399, 426, 434, 451–

12 | 52, 807–47, 969, 972, 978, 987, 992, 995, 1020, 1034, 1076).)   Meanwhile, to the extent she

13 | opined Plaintiff's ability to perform detailed and complex tasks is unimpaired; and her ability to

14 | deal with the usual stress encountered in the workplace is only mildly impaired, the ALJ rejected

15 | Dr. Lewis's opinion as unsupported by the record.   (AR 29 (citing AR 326–421, 451–802, 807–

16 | 47, 852–69, 1042–79).)   Rather, the ALJ found the "moderate" limitation in adapting or

17 | managing herself adequately encompassed Plaintiff's limitations where the medical evidence of

18 | record generally indicates Plaintiff is cooperative and adequately groomed with appropriate

19 | behavior and normal insight and judgment, and where she reported she is able to perform her

20 | daily grooming independently, handle money, go grocery shopping, spend time with her family,

21 | and prepare herself simple meals.   (AR 23.)   Applying the "moderate" limitation of the paragraph

22 | B area of adapting and managing herself—i.e., a finding that Plaintiff's functioning in this area

23 | "independently, appropriately, effectively, and on a sustained basis" is "fair"—the ALJ included

24 | RFC limitations that Plaintiff could "frequently" (not always) adapt to changes in the workplace,

25 | but "is limited to simple and routine tasks" and "would not be capable of complex judgment or

26 | analysis in the workplace."   (AR 25.)   On this record and the ALJ's evaluation of the medical

27 | opinions and records—which, again, remain unchallenged by Plaintiff—the Court finds

28 | substantial evidence supports the ALJ's RFC determination.

Finally, even if the ALJ erred with respect to his translation of Plaintiff's limitations in this functional area, Plaintiff has not demonstrated such error was harmful.  Stout, 454 F.3d at 1055–56 (court may not reverse where ALJ error is harmless); Shinseki, 556 U.S. at 409; see also Molina, 674 F.3d at 1115–21.  Indeed, of the positions identified by the ALJ, the position of institutional cleaner requires only a reasoning level 1, which is defined as "[applying] commonsense understanding to carry out simple one- or two-step instructions" and "[dealing] with standardized situations with occasional or no variables in or from these situations encountered on the job." 381.687-014 Cleaner, Commercial or Institutional, 1991 WL 673257.[12] Moreover, all three identified positions require the lowest level of aptitude in general learning ability and are characterized as performing "repetitive or short-cycle work." Id.; 381.687-022 Cleaner, Laboratory Equipment, 1991 WL 673259; 726.687-010 Electronics Worker, 1991 WL 679633.  As noted, courts within this circuit have found jobs characterized as requiring only simple, repetitive tasks sufficiently encompass moderate limitations in dealing with changes. Rogers, 490 Fed. App'x. at 17–18; Stubbs-Danielson, 539 F.3d at 1171, 1174; Henry, 2016 WL 164956, at *18; Longston, 2015 WL 7761065, at *3–4; Acuna, 2015 WL 7566624, at *2.  Thus, even if the ALJ erred in limiting Plaintiff's ability to adapt to changes in the workplace to only "frequently," the error is not prejudicial in light of the job descriptions identified in the DOT.  As such, Plaintiff has not met her burden of establishing reversible error. Shinseki, 556 U.S. at 409.

In sum, the Court finds no internal inconsistencies within the ALJ's decision.  Further, this Court must defer to the decision of the ALJ where evidence exists to support more than one rational interpretation. Drouin v. Sullivan, 966 F.2d 1255, 1258 (9th Cir. 1992); Burch, 400 F.3d at 679.  "As [the Court] cannot say that the ALJ's interpretation of the available evidence was not rational, the ALJ's conclusions were supported by substantial evidence." Shaibi, 883 F.3d at 1108.  Accordingly, the Court finds the ALJ properly synthesized Plaintiff's functional limitations in his RFC determination based on his step three "paragraph B criteria" findings and

---

[12] The Court notes that the ALJ appears to mistakenly refer to the commercial/institutional cleaner position as an SVP 2 position; however, the DOT plainly indicates the position is a Reasoning Level 1 position, which the Court accepts for purposes of its analysis. See 381.687-014 Cleaner, Commercial or Institutional, 1991 WL 673257.

the medical record.

## V.

## CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.      Plaintiff's appeal from the decision of the Commissioner of Social Security (ECF No. 18) is DENIED; and

2.      The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Yolanda Garza and close this case.

IT IS SO ORDERED.

Dated:   **July 26, 2022**

_____
UNITED STATES MAGISTRATE JUDGE